UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **NEW ORLEANS SECULAR HUMANIST ASSOCIATION, INC.** | **CIVIL ACTION** |
| **versus** | **NO. 04-3165** |
| **CYNTHIA BRIDGES, SECRETARY OF THE LOUISIANA DEPARTMENT OF REVENUE** | **SECTION C** |

### ORDER AND REASONS

Before this Court is Plaintiff New Orleans Secular Humanist Association, Inc's ("NOSHA") Motion for Preliminary Injunction, requesting that this court preliminarily enjoin Cynthia Bridges, Secretary of the Louisiana Department of Revenue from enforcing and to have declared unconstitutional five Louisiana sales tax exemptions as being in violation of the Establishment Clause of the First Amendment to the United States. The five statutes at issue are as follows:

    1. La. R.S. 47:301(8)(e)(i), which exempts the Society of the Little Sisters of the Poor from paying any sales tax;

    2. La. R.S. 47:301(8)(d)(i) and (d)(iv), which exempts churches and synagogues from payment of sales taxes for the purchase of bibles, songs books and literature used for religious

purposes;

      3. La.R.S. 33:4574.1(A)(1)(b), which, at the time this lawsuit was filed, exempted religious organizations from charging and collecting occupancy taxes when selling overnight lodging to persons for religious purposes;

      4. La.R.S. 47:301(6)(b), which, at the time this lawsuit was filed, exempted persons from paying sales taxes for overnight lodging at facilities operated by religious organizations for religious purposes; and

      5. La.R.S. 47:301(14)(b)(iv), which, at the time this lawsuit was filed, exempted persons from paying sales taxes at camps operated by religious organizations for religious purposes.

      Challenges to NOSHA's standing, a request to dismiss the matter for failure to state a claim, a request for the Court to abstain from hearing the case, and a request to join necessary parties were previously denied. (Rec. Doc. 8.) Having considered the record, the memoranda and the law, the Motion for Preliminary Injunction is GRANTED in part and DENIED in part for the following reasons.

## I. Background

      NOSHA is a Louisiana non-profit corporation which seeks to raise public awareness about the values of secular humanism. NOSHA pays sales and use taxes in Louisiana for a variety of purposes, including the purchase of services and materials, publishing news and educational information, and paying for overnight lodging. Defendant is Cynthia Bridges, Secretary of the Louisiana Department of Revenue ("the State"), a subdivision of the Louisiana State government authorized under La. R.S. 47:1501. As a representative of the executive branch of the State, Defendant Bridges is charged with enforcing the allegedly unconstitutional tax exemptions.

The plaintiff makes three similar facial challenges to the five statutes. First it challenges the exemption from paying any sales and use taxes provided by La. R.S. 47:301(8)(e) to the Society of the Little Sisters of the Poor.[1] The Little Sisters is an organization affiliated with the Roman Catholic Church, and provides food, clothing and shelter to the elderly poor. Second, it challenges the constitutionality of the exemption from paying sales and use taxes on publications used for religious purposes given under La. R.S. 47:301(8)(d) to certain churches and synagogues. La. R.S. 47:301(8)(d)[2] provides that churches and synagogues who have obtained a certificate of authorization from the secretary of the Department of Revenue are exempted from paying sales and use taxes on the purchase of bibles, song books, and literature used for religious purposes. Third, NOSHA claims that, together, La. R.S. 47:301(6)(b), La. R.S. 47:301(14)(b)(iv), and La. R.S. 33:4574.1(A)(1)(b) unconstitutionally exempt the payment of sales, use and occupancy taxes at hotels and places of amusement at camp and retreat facilities operated by religious organizations for religious purposes. The Court notes, however, that although the text of these three statutes granted tax exemptions to religious groups at the time this lawsuit was filed, the text of these statutes was amended in 2005 to grant a broader tax exemption to nonprofit

---

[1] Section 301(8)(e) states in pertinent part:
"For purposes of the payment of the state sales and use tax and the sales and use tax levied by any political subdivision, the term 'person' shall not include the Society of the Little Sisters of the Poor."

[2] Section 301(8)(d) provides in pertinent part:
"For purposes of the payment of the state sales and use tax and the sales and use tax levied by any political subdivision, the term 'person' shall not include a church or synagogue. . . . The exclusion from the sales and use tax authorized by this Subparagraph shall apply only to purchases of bibles, song books, or literature used for religious instruction classes."

organizations and the reference to religious organizations was deleted.[3] Together, La. R.S. 47:301(6)(b),[4] La. R.S. 47:301(14)(b)(iv),[5] and La. R.S. 33:4574.1(A)(1)(b)[6] now provide tax exemptions for the payment of sales, use and occupancy taxes for hotels, overnight lodging, and places of amusement at camp and retreat facilities operated by *nonprofit organizations* exempt from federal income tax under Section 501(a) of the Internal Revenue Code as an organization described in Section 501(c)(3)[7] of the Internal Revenue Code, provided that the net revenue

---

[3] See 2005 La. Sess. Law Serve. Act 377 (H.B. 639), which traces the 2005 amendments.

[4] Section 301(6)(b) provides, in relevant part:
> For purposes of the sales and use taxes of all tax authorities in this state, the term 'hotel' as defined herein shall not include camp and retreat facilities owned and operated by nonprofit organizations exempt from federal income tax under Section 501(a) of the Internal Revenue Code as an organization described in Section 501(c)(3) of the Internal Revenue Code provided that the net revenue derived from the organizations's property is devoted wholly to the nonprofit organization's purposes.

[5] Section 301(14)(b)(iv) provides, in pertinent part:
> For purposes of the sales and use taxes of all tax authorities in the state, the term 'places of amusement' as used herein shall not include camp and retreat facilities owned and operated by nonprofit organizations exempt from federal income tax under Section 501(a) of the Internal Revenue Code as an organization described in Section 501(c)(3) of the Internal Revenue Code provided that the net revenue derived from the organization's property is devoted wholly to the nonprofit organization's purposes.

[6] Section 4574.1(A)(1)(b) provides, in relevant part:
> The word 'hotel' used herein shall not include camp and retreat facilities owned and operated by nonprofit organizations exempt from federal income tax under Section 501(a) of the Internal Revenue Code as an organization described in Section 501(c)(3) of the Internal Revenue Code provided that the net revenue derived from the organization's property is devoted wholly to the nonprofit organization's purposes.

[7] Section 501(a) provides that "[a]n organization described in subsection (c) or (d) or section 401(a) shall be exempt from taxation under this subtitle unless such exemption is denied under section 502 or 503." Section 501(3)(c) states that: "The following organizations are referred to in subsection (a):. . . Corporations, and any community chest, fund, or foundation,

derived from the organization's property is devoted wholly to the organization's purposes.

NOSHA specifically argues that the statutes "favor[] religious persons and/or organizations who conduct faith based actions." (Rec. Doc. 12 at 5.) In other words, the statutes are narrowly drafted to benefit only religious taxpayers and lack constitutionally required breadth and neutrality. The State opposes the motion, making five arguments. The State argues (1) that NOSHA lacks standing to challenge the statutes because it is not injured by their operation (Rec. Doc. 16 at 3-6); (2) that this Court must abstain from hearing this matter because there is a pending state court law suit and because these statutes have not yet been construed in state court (Rec. Doc. 16 at 9-10); and (3) that this Court cannot proceed in this lawsuit without joining additional parties who have an interest in maintaining the tax exemptions (Rec. Doc. 16 at 10). The State has previously raised these same three arguments in its Motion to Dismiss (Rec. Doc. 3), which the Court denied in its Order on July 7, 2005 (Rec. Doc. 8). Because no intervening law or newly developed fact has been presented, the Court declines to revisit its decision. The State also argues that if there were no exemptions for religious organizations, then the state would be excessively tangled with churches and religious organizations. (Rec. Doc. 16 at 12.) Because the State has presented no law to support this argument, and in light of the analysis below, the Court

---

organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation (except as otherwise provided in subsection (h)), and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of (or in opposition to) any candidate for public office."

finds that it has no merit. Last, the State argues that the Court has no jurisdiction to hear this matter because of the Tax Injunction Act ("TIA") (Rec. Doc. 16 at 6, 11). This argument is addressed hereinafter.

## II. Standard of Review

"A preliminary injunction may be issued to protect the plaintiff from irreparable injury and to preserve the district court's power to render a meaningful decision after a trial on the merits." *Canal Authority of State of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974). A preliminary injunction is appropriate only when the movant can establish the following four prerequisites: "(1) a substantial likelihood that the movant will prevail on the merits; (2) a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury outweighs the threatened harm to the defendant; and (4) the granting of the preliminary injunction will not disserve the public interest." *McWaters v. Federal Emergency Management Agency*, 408 F.Supp.2d 221, 228 (E.D. La. 2005) (*citing Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987)). The movant must satisfy all four factors; a failure to establish one of the four factors requires a denial of the preliminary injunction. *See Mississippi Power & Light v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).

The United Stated Fifth Circuit Court of Appeals has frequently cautioned that a preliminary injunction is an "extraordinary remedy," which should be granted only if the movant has clearly carried the burden of persuasion on all four of the above prerequisites. *See, e.g., Cherokee Pump & Equipment Inc. v. Aurora Pump*, 38 F.3d 246, 249 (5th Cir.1994) (*quoting Mississippi Power & Light,* 760 F.2d 618). As a result, "[t]he decision to grant a preliminary injunction is to be treated as the exception rather than the rule." *Id.; see also House the Homeless,*

*Inc. v. Widnall*, 94 F.3d 176, 180 (5th Cir.1996).

**III. Analysis**

For this Court to issue a preliminary injunction, it first must find a substantial likelihood that NOSHA will prevail on the merits in its claims that five Louisiana sales tax exemptions are in violation of the Establishment Clause of the First Amendment to the United States. With respect to La. R.S. 47:301(6)(b), La. R.S. 47:301(14)(b)(iv), and La. R.S. 33:4574.1(A)(1)(b), this Court finds that NOSHA has not established a substantial likelihood that it will prevail on the merits, as the statutory text is neutral and broad in that it provides tax exemptions to all nonprofit organizations exempt from federal income tax under Section 501(a) of the Internal Revenue Code as an organization described in Section 501(c)(3) of the Internal Revenue Code, not solely religious organizations, provided that the net revenue derived from the organization's property is devoted wholly to the organization's purposes. Therefore, this Court declines to issue a preliminary injunction as to these three statutes.

With respect to La. R.S. 47:301(8)(e) and La. R.S. 47:301(8)(d), this Court finds the issues to be identical to *American Civil Liberties Union Foundation of Louisiana v. Crawford*, 2002 WL 461649 (E.D. La. 2002), in which this Court granted the ACLU's request for a preliminary injunction enjoining the operation of the same statutes as being in violation of the Establishment Clause of the First Amendment. The case was ultimately reversed on appeal because the Fifth Circuit found that "this case involves a putative taxpayer seeking to prevent the State from carrying out the current tax system by having a portion of that tax system declared unconstitutional; a case that because of the Tax Injunction Act, cannot be heard in federal district court." *American Civil Liberties Union Foundation of Louisiana v. Bridges,* 334 F.3d 416, 421

(5th Cir. 2003) This proposition – that the Tax Injunction Act prevents a federal district court from hearing a case challenging tax exemption statutes as unconstitutional – has been expressly overruled by the Supreme Court in *Hibbs v. Winn*, 542 U.S. 88, 105 (2004). In *Hibbs*, the Supreme Court held that, "in enacting the TIA, Congress trained its attention on taxpayers who sought to avoid paying their tax bill by pursuing a challenge route other than the one specified by the taxing authority. Nowhere does the legislative history announce a sweeping congressional direction to prevent federal-court interference with all aspects of state tax administration." *Id.* at 104-105 (internal citations omitted). The TIA operates to "restrain state taxpayers from instituting federal actions to contest their liability for state taxes, but not to stop third parties from pursuing constitutional challenges to tax benefits in a federal forum." *Id.* at 107-108. Therefore, contrary to the State's argument, this Court has jurisdiction to hear this matter, and finds no reason to treat this request for preliminary injunction differently from how it treated the ACLU's request for preliminary injunction in *American Civil Liberties Union Foundation of Louisiana v. Crawford*, 2002 WL 461649 (E.D. La. 2002).[8]

---

[8] This Court also finds that this case is different from *Henderson v. Stalder*, 407 F.3d 351, 359 (5th Cir. 2005), which construed *Hibbs* to apply only to cases in which "(1) a third party (not the taxpayer) files suit, and (2) the suit's success will enrich, not deplete, the government entity's coffers." In *Henderson*, the Fifth Circuit held that a First Amendment challenge to Louisiana's prestige license plate program was barred by the TIA because the claimants' success would necessarily result in elimination of revenues generated by program. *Id.* Because this suit challenges a tax exemption statute, exactly the same as the plaintiffs in *Hibbs*, the Court finds that its jurisdiction is not precluded by the TIA. *See id.* ("Because the plaintiffs [in *Hibbs*] were attacking a tax credit, and the impact of their suit would overturn the credit, thus restoring money to the state treasury, the [Supreme] Court held [the TIA] was not intended to stop third parties from pursuing constitutional challenges to tax benefits in a federal forum.") (internal citations omitted).

This Court finds that all four requirements for a preliminary injunction have been met with respect to La. R.S. 47:301(8)(e) and La. R.S. 47:301(8)(d). This Court finds a substantial likelihood that NOSHA will prevail on the merits. La. R.S. 47:301(8)(e) exempts the Society of the Little Sisters of the Poor from paying any sales tax. The Little Sisters is an organization affiliated with the Roman Catholic Church, which provides food, clothing and shelter to the elderly poor. La. R.S. 47:301(8)(d) provides that churches and synagogues who have obtained a certificate of authorization from the secretary of the Department of Revenue will be exempted from paying sales and use taxes on the purchase of bibles, songs books and literature used for religious purposes.

The Establishment Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion." The clause applies to the states through the Fourteenth Amendment. *See e.g., Everson v. Board, of Education*, 330 U.S. 1, 8 (1947). The First Amendment "requires the state to be a neutral in its relations with groups of religious believers and nonbelievers ..." 330 U.S. at 18. "The State must confine itself to secular objectives, and neither advance nor impede religious activity." *Roemer v. Board of Public Works of Maryland*, 426 U.S. 736, 747 (1976). In 1970, the Supreme Court refined its Establishment Clause jurisprudence. For a statute to be constitutional, "[f]irst, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion, . . . finally, the statute must not foster an excessive government entanglement with religion." *Lemon v. Kurtzman*, 403 U.S. 602, 612-613 (1971). The Fifth Circuit has also noted that two additional lines of analysis have since been developed by the Supreme Court: "The second test, the 'coercion' test, measures whether the government has directed a formal religious

exercise in such a way as to oblige the participation of objectors. The final test, the 'endorsement' test, prohibits the government from conveying or attempting to convey a message that religion is preferred over non-religion." (internal citations omitted). *Doe v. Beaumont Independent School District*, 240 F.3d 462, 468 (5th Cir. 2001).

In this matter, the Court is presented with facial challenges to the statutes and the record is devoid of any facts pertaining to the application of these statutes. With a facial Establishment Clause challenge, the first part of the *Lemon* test is often determinative, and the court examines the statutes based on their text, context and legislative purpose to determine the nature of the purpose under *Lemon*. *Santa Fe Independent School District v. Doe*, 530 U.S. 290, 312- 316 (2000) ("Our Establishment Clause cases involving facial challenges, however, have not focused solely on the possible applications of the statute, but rather have considered whether the statute has an unconstitutional purpose."). Thus, the Court must examine "whether the statute has an unconstitutional purpose." *Id.* at 314. The court may also consider the statutes' "inevitable" effects. *Id.* at 316.

La. R.S. 47:301(8)(e) and La. R.S. 47:301(8)(d) provide exemptions applicable only to religious organizations, and can be considered together on the basis of this commonality. In *Texas Monthly, Inc. v. Bullock*, 489 U .S. 1 (1989), the Supreme Court held that a Texas state sales tax exemption for religious publications violated the Establishment Clause. "Every tax exemption [for religious groups only] constitutes a subsidy that affects nonqualifying taxpayers, forcing them to become indirect and vicarious donors." *Id*. at 14 (internal citations omitted). For a tax exemption for religious groups to be constitutional, it must "be warranted by some overarching secular purpose that justifies like benefits for nonreligious groups." *Id*. at 15, fn 4. As in *Texas*

-10-

*Monthly*, "[t]here is no evidence in the record, and [the State] does not argue in its brief to this Court, that the exemption for religious periodicals was grounded in some secular legislative policy that motivated similar tax breaks for nonreligious activities. It certainly appears from [the statutory text] that the exemption was intended to benefit religion alone." *Id.*

In the absence of any controverting evidence, the language of the challenged statutes is clear in that the statutes benefit only religious organizations.[9] Thus, the statutes have an unconstitutional purpose and effect under *Lemon*, and NOSHA has shown a substantial likelihood of success on the merits.

This Court also finds a substantial threat that irreparable harm will result if the injunction is not granted. "It is well settled that the loss of First Amendment freedoms for even minimal

---

[9] These statutes are thus unlike broad, neutral statutes that have been held constitutional because they apply equally to religious and non-religious groups. *See Walz v. Tax Commission of City of New York*, 397 U.S. 664, 666-667 (1970) (statute exempted property taxes for property used exclusively for educational, charitable, and religious uses); *Mueller v. Allen*, 463 U.S. 388, 394-395 (1983) (holding that a Minnesota statute allowing state taxpayers, in computing their state income tax, to deduct expenses incurred in providing tuition, textbooks and transportation for their children attending elementary or secondary school did not violate establishment clause, notwithstanding statistics showing that statute's application primarily benefitted religious institutions and notwithstanding fact that state officials had to determine whether particular textbooks qualified for deduction, where state's efforts to assist parents in meeting rising cost of education served secular purpose and deduction was available to all parents, including those whose children attended public schools and those whose children attended nonsectarian private schools); *Mitchell v. Helms*, 530 U.S. 793, 808 (2000) (holding that statute, under which federal government distributes funds to state and local governmental agencies, which in turn lend educational materials and equipment to public and private schools, does not violate Establishment Clause of the First Amendment). Because the statutory text exclusively favors religious organizations, this Court also finds that the government has obliged the participation of objectors by forcing them to become involuntary donors to the religious organizations exempt under these statutes. *See Texas Monthly*, 489 U.S. at 14. The Court also finds that the State, in enforcing these statutes, is attempting to convey a message that religion is preferred over non-religion, because the statutes give benefits solely to religious groups. *See Doe*, 240 F.3d at 468.

periods of time constitutes irreparable injury justifying the grant of a preliminary injunction." *Deerfield Medical Center v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981); *Wexler v. City of New Orleans*, 267 F.Supp.2d 559, 568 (E.D. La. 2003); *Howell v. City of New Orleans*, 844 F.Supp. 292, 294 (E.D. La. 1994). Because NOSHA pays sales tax on an ongoing basis, it is continually forced to be an involuntary donor and give unwilling support to the religious organizations exempt under these statutes. *See Texas Monthly*, 489 U.S. at 14. Thus, its freedom to worship or not to worship is being violated on an ongoing basis. As this Court found in *American Civil Liberties Union Foundation of Louisiana v. Crawford*, 2002 WL 461649 (E.D. La. 2002), the First Amendment presumption of irreparable harm encompasses the Establishment Clause claims at issue here.

With regard to the third factor, the Court finds that the plaintiff has shown that the threatened injury outweighs any damage that the injunction may cause the State. The plaintiff is being denied its First Amendment freedoms while the statute remains in operation. In contrast, the State, at a minimum, does not appear to be at risk of suffering any harm from a grant of the preliminary injunction, and, furthermore, will benefit from the increased collection of tax revenues.[10] Thus in balancing the equities, the scale tips in favor of the plaintiff.

Finally, the Court finds that granting the preliminary injunction will not disserve the public interest. The public interest is best served by enjoining any statute which impermissibly favors a religious group in violation of the Establishment Clause of the First Amendment until it can be conclusively determined whether the statute withstands constitutional scrutiny.

For purposes of this motion, therefore, the plaintiff has satisfied the four prerequisites

---

[10] The Court notes that the State does not oppose the motion on these grounds.

necessary to the entitlement to the preliminary injunctive relief sought in this motion with respect to La. R.S. 47:301(8)(e) and La. R.S. 47:301(8)(d).

**III. Conclusion**

For the foregoing reasons, IT IS ORDERED that New Orleans Secular Humanist Association, Inc's Motion for Preliminary Injunction is GRANTED as to La. R.S. 47:301(8)(e) and La. R.S. 47:301(8)(d), and DENIED as to La. R.S. 47:301(6)(b), La. R.S. 47:301(14)(b)(iv), and La. R.S. 33:4574.1(A)(1)(b).

IT IS FURTHER ORDERED that the parties will submit a proposed preliminary injunction order, approved as to form, within ten days. Pursuant to Fed. Rule Civ. Proc. 65(c), the preliminary injunction will become effective upon the payment of security in the amount of $100. In addition, the parties shall advise the Court in writing and within ten days as to whether a permanent injunction hearing and trial will be necessary.

New Orleans, Louisiana, this 17th day of April, 2006.

_____
Judge Helen G. Berrigan
United States District Judge